IN THE UNITED STATES BANKRUPTCY COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: <br><br> HORIZON GROUP MANAGEMENT, LLC, <br><br> *Debtor*. | No.  14-41230 <br><br> Chapter 7 <br><br> The Hon. Timothy A.  Barnes |
| ANDREW J. MAXWELL, Trustee for the Estate of Horizon Group Management, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> *Defendant*. | Adv. Proc. No. 16-465 |

**MEMORANDUM OF LAW IN SUPPORT OF THE UNITED STATES'
MOTION FOR SUMMARY JUDGMENT**

The United States hereby provides its memorandum of law in support of its motion for summary judgment.

**OVERVIEW**

The Trustee is attempting to recover five payments by the Debtor under § 548(a) or § 548(b) of the Bankruptcy Code made to the IRS – four for the tax liabilities of Daniel Michael and one for the tax liabilities of Jeffrey Michael.  Daniel treated the Debtor as a his wholly-owned single member LLC and thus as a "disregarded entity" under the Internal Revenue Code by reporting its income on the joint tax returns of Daniel and his spouse, Martha.  The complaint alleges that the Debtor is in fact a single member LLC but that its member is the Daniel Michael Living Trust u/t/a/d March 4, 1998, an *inter vivos* Illinois trust (the "Daniel Trust").  (Doc. 1 at ¶¶ 47, 48.)  The complaint does not say whether the Daniel Trust is a revocable trust but, based

1

on the tax treatment, that appears to be the case and so, for tax purposes, the sole member of the Debtor does correctly appear to be Daniel Michael (or his equally disregarded pass-through trust). As a "disregarded entity," then, the Debtor is liable for Daniel's taxes. *See* 26 C.F.R. 301.7701-3(b)(1)(ii).

But even if that is incorrect – *i.e.*, even assuming the Daniel Trust was an irrevocable and taxable complex trust with multiple income beneficiaries – the Trustee admits that Debtor was the alter ego of Daniel and also of Jeffrey. In fact, the entire complaint essentially maintains that the Debtor is a sham entity. Therefore, the Debtor was liable for Daniel's and Jeffrey's taxes. The timely payment of an obligation *of the Debtor* to the IRS is not a fraudulent transfer. At a minimum, as to the four payments to Daniel, the complaint must fail as it cannot be a fraudulent transfer for a single member LLC to timely pay, in the ordinary course of business, the tax incurred by its owner *on that entity's income attributed directly to that owner* pursuant to the Treasury regulations.[1]

## ARGUMENT

Section 548(a) of the Bankruptcy Code provides that a bankruptcy trustee may avoid a transfer of property of the debtor made or incurred within two years before the date of the filing of the petition if the debtor (A) made the transfer with actual intent to hinder, delay, or defraud another creditor or (B) received less than a reasonably equivalent value in exchange and certain other conditions are met. Section 548(b) of the Bankruptcy Code provides that the trustee of a partnership debtor may avoid a transfer of property from the debtor to the debtor's general partner if the debtor was insolvent on the date of the transfer. Preliminarily, § 548(b) is wholly

---

[1] This is a pure issue of law and, as such, there are no facts in dispute.

2

inapplicable because it pertains only to partnerships and, as the Trustee admits, the Debtor is a single member LLC, not a partnership.

As for § 548(a) – or (b) even if the Debtor is incorrectly treated as a partnership – under Section 548(c) of the Bankruptcy Code a transferee that receives the property in good faith and for value may retain the property notwithstanding the application of Sections 548(a) and (b). The transferee must therefore demonstrate both good faith and value. *Helms v. Roti (In re Roti)*, 271 B.R. 281, 295 (Bankr. N.D. Ill. 2002). As the Debtor, as an alter ego of Daniel Michael and Jeffrey Michael during the period when the payments to the IRS were made, received reasonably equivalent value for the transfer, and because the IRS accepted the payment in accordance with federal law and in good faith, the United States is entitled to retain the payments.

**A. The Debtor received reasonably equivalent value for the transfer.**

"Value" is defined in § 548(d)(2)A) to include the "satisfaction or incurring of a present or antecedent debt of the debtor." While "reasonably equivalent" is not defined in the Bankruptcy Code, it is "not particularly esoteric; a party receives reasonably equivalent value if it gets roughly the value it gave.'" *Jordan v. Kroneberger (In re Jordan)*, 392 B.R. 428, 441-42 (Bankr. D. Idaho 2008) (citing *VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 631 (3d Cir. 2007)). The test for "reasonably equivalent value" evaluates all benefits received by the Debtor, not just the specific property received in exchange. The purpose of the reasonably equivalent value requirement is to preserve the bankruptcy estate for the benefit of the unsecured creditors. *Frontier Bank v. Brown (In re N. Merch., Inc.)*, 371 F.3d 1056, 1059 (9th Cir. 2004). The question is therefore whether Debtor, and therefore the unsecured creditors, were worse off after the transaction.

Reasonably equivalent value exists here because Debtor was an alter ego of Daniel and Jeffrey Michael and therefore liable for their taxes. The United States may rely on state or

3

federal common law for alter ego liability.[2] In order to determine whether an entity is an alter ego of another person or entity, Illinois courts look to "evidence of misrepresentation; commingling of funds, assets, or identities; undercapitalization; failure to operate at arm's length; and failure to comply with corporate formalities." *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir. 1991) (quoting *Koch Refining v. Farmers Union Central Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987)). *See also Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371, 378-79 (7th Cir.2008) (applying Illinois law and stating that an entity may be the alter ego of another "when there is 'such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist' and when 'adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" (citation omitted).). Here, Plaintiff admits that, during the period the Debtor made the payments at issue to the IRS, Debtor was the alter ego of Daniel Michael and of Jeffrey Michael. Ex. F,

---

[2] The United States maintains that it can rely on federal common law for the determination of alter ego status for the purposes of collecting a uniquely federal debt such as federal taxes. *Cf. United States v. Kimbell Foods, Inc*., 440 U.S. 715, 726 (1979). This is explained in IRS Chief Counsel Notice 2012-02, 2011 WL 6257204. The IRS notice lists numerous examples of cases applying federal common law to determine alter ego questions to collect other kinds of federal debts and the case for doing so with federal taxes is in fact stronger than with any other kind of federal debt. Most courts avoid the issue of whether to apply federal or state law by finding liability under state alter ego doctrine or finding that the difference is not outcome-determinative – indeed, federal common does not different from the test in the vast majority of states. *See, e.g.*, *Century Hotels v. United States,* 952 F.2d 107, 110 n.4 (5th Cir. 1992) ("State and federal alter ego tests are essentially the same. Our non-diversity alter ego cases rarely state whether a state or federal standard controls, and apply state and federal cases interchangeably" (citation omitted)); *United States v. Wolff,* No. 09-CV-238J, 2010 WL 6238029, at *7 (D. Wyo. May 18, 2010) ("The Court need not decide whether Wyoming law or federal common law applies regarding the alter ego claim, as both tests are satisfied in this case."); *Thomas Ind., Inc. v. City of Bristol*, 336 F.Supp.3d 28, 34 (D. Conn. 2018) (finding either choice of law results in liability). The United States maintains that since Illinois law supports alter ego liability here, and since the trustee is estopped from denying alter ego liability, it is unnecessary to address possible differences in the standards. But the United States reserves the right to invoke federal law if the Trustee now tries to change tune and argues that there is no alter ego liability of the Debtor for the tax debts under Illinois law.

Response to Request #27. Further, the Trustee admits that Debtor's actions during the relevant time period—including but not limited to being insolvent and undercapitalized, failing to observe any formalities or keep a plethora of records that companies generally keep in the ordinary course of business, paying personal expenses of Daniel Michael and Jeffrey Michael with funds commingled with those of other organizations owned and operated by Daniel Michael, and Daniel and Jeffrey Michael causing Debtor to divert corporate assets for their personal benefit (not just to pay taxes) and to the detriment of corporate creditors—show that Debtor was the alter ego of Daniel Michael and of Jeffrey Michael. Ex. F.

Because Debtor was an alter ego of Daniel and Jeffrey Michael, had the company not paid their taxes, the United States could have a judgment against the Debtor imposing liability on it. Had such a judgment been obtained, and satisfied prepetition, surely the Trustee could not be heard to claim a fraudulent transfer. But the liability of the debtor for the individuals' taxes does not depend on a judgment and the payment is not fraudulent as long as the liability could properly have been found.[3]

Moreover, even without applying alter ego doctrine, Debtor was at least liable for Daniel Michael's taxes. Under Treasury Regulations, a limited liability company owned by a single member is a "disregarded entity" for income tax purposes unless the entity elects to be taxed separately and no such election was made here. Instead, the LLC's income is reported on the owner's Schedule C accompanying the Form 1040 individual (or joint) income tax return. 26

---

[3] Additionally, had the taxes not been paid, it is black-letter law that the United States could have forcibly collected the tax obligations from the assets of the Debtor. *See G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977) ("If petitioner was Norman's alter ego . . . [i]t would then follow that the Service could properly regard petitioner's assets as Norman's property subject to the [tax] lien . . . ." (citations omitted)); *see also United States v. Northern States Investments, Inc.*, 670 F. Supp. 2d 778. 787 (N.D. Ill. 2009). Of course, here no lien ever arose because the taxes were timely paid in the ordinary course of business.

5

C.F.R. § 301.7701-3(b). It would be anomalous to hold that an individual should bear the tax on an entity's income and then hold it to be a fraudulent transfer for that entity to either distribute sufficient funds to satisfy the tax or pay them directly on the owners behalf (as is very commonly done).[4] Moreover, when this regulation was last amended, it was clarified that entities disregarded for income tax purposes would not be disregarded for employment tax purposes – thus meaning that owners were not *automatically* liable for the entity's employment taxes or excise taxes (that is, except to the extent held liable for the trust fund recovery penalty under 26 U.S.C. § 6672). *See* Treasury Decision 9356, 2007-39 I.R.B. 675, 2007 WL 2323341 (explaining new §301.7701–2(c)(2)(iv) and (v)). Indeed, for purposes of setoffs of refunds, the regulations simultaneously clarified that excise tax refunds to a disregarded entity under 26 U.S.C. §§ 6420, 6422, or 6427 would be treated as payable to the owner. 26 C.F.R. § 1.34–1. This enables the IRS to credit (administratively) excise tax refunds claimed by a disregarded LLC against its owner's income tax liabilities, pursuant to 26 U.S.C. § 6402(a).

But for the payments made by the Debtor, the payments made by Jeffrey Michael towards his tax liabilities for tax year 2012, and by Daniel Michael towards his tax liabilities for tax years 2012 and 2013, would have been insufficient to pay the amounts they owed. Ex. C-E. Had Daniel or Jeffrey Michael not paid their federal income taxes, the United States would have

---

[4] This is also reflected indirectly in the regulations "definition of limited liability" for purposes of paragraph (b)(2)(i). That paragraph addresses foreign-eligible entities owned by a single member and explains that limited liability of such entities only will apply if the member is not liable for the entity's debts under applicable foreign law. The definition is applied only to foreign entities because the same result already exists under state law. That is, members of state LLCs always enjoy limited liability. The regulation does not contemplate making it illegal for the LLC to pay the tax its very income causes its owner to incur which, in any situations involving small business owners, may be the taxpayer's only significant source of income. As a matter of federal policy, state law cannot make it illegal for such an LLC to pay the tax caused by its income that the owner incurs under the Internal Revenue Code.

6

become a creditor of the Debtor. As such, every dollar paid to the United States satisfied an obligation that the United States could have enforced against the Debtor directly, and was thus not a fraudulent transfer.

As noted above, 11 U.S.C. § 548(d)(2)(A) defines "value" to include the satisfaction of an antecedent debt. And the reason for that is confirmed by § 548(c) which insulates a good-faith payee for value from being treated as an avoidable transfer unless it is avoidable under § 544, § 545, or § 547 of the Bankruptcy Code. Section 547, in turn, provides that timely ordinary course payments are not preferences even when occurring within the preference look-back period. Section 545 has no application here as no lien is involved. Section 544(a) has no application to a prepetition transfer and § 544(b) is not available to the Trustee under Seventh Circuit precedent. *In re Equipment Acquisition Resources, Inc.*, 742 F.3d 743, 751 (7th Cir. 2014) ("EAR, acting with the state-law avoidance powers of an unsecured creditor, does not have a viable cause of action [under § 544(b)] against the United States to avoid the tax payment at issue.")

### B. The United States received the transfers in good faith.

The Bankruptcy Code does not define "good faith," as it is not susceptible of precise definition and is generally determined on a case-by-case basis. *Helms*, 271 B.R. at 295-96 (citing *Fisher v. Sellis (In re Lake States Commodities, Inc.)*, 253 B.R. 866. 878 (Bankr. N.D. Ill. 2000)). As a taxing authority, the Internal Revenue Service is presumed to act in good faith when it accepts a facially valid form of payment (such as, in this case, checks) in dutifully executing the federal income tax laws. *See, e.g., Road & Highway Builders, LLC v. United States*, 102 Fed. Cl. 88, 92-93 (2011) (holding that the IRS is presumed to act in good faith); *United States v. Jones*, 176 F.2d 278, 282 (9th Cir. 1949); *Sanders v. United States Postal Serv.*, 801 F.2d 1328, 1331 (Fed. Cir. 1986). The Internal Revenue Code provides that the United

7

States acts lawfully when it accepts tax payments made by "any commercially acceptable means." 26 U.S.C. § 6311(a). These include certified and uncertified checks. 26 U.S.C. § 6311. The Internal Revenue Code imposes no obligation to investigate the source of payments of taxes. Treasury Regulations permit the Internal Revenue Service to reject a payment only if it believes the check will be dishonored on presentment; there is no provision permitting rejection of a payment based on the payment's source. *See* 26 C.F.R. § 301.6311-1(a)(1)(i). On the contrary, the regulations explicitly permit a single check to cover multiple taxpayers. *See id.* § 301.6311-1(a)(1)(iii).

There is no reasonable argument that the Internal Revenue Service accepted the payments at issue in any manner contrary to the statute or regulations. Indeed, the Internal Revenue Service was required by law to accept the payments made by the Debtor—and compliance with these laws is by definition good faith. As one court noted, the fact that the "IRS would negotiate a check from Mickey Mouse if it was accompanied by a payment voucher does not negate the good faith of the IRS." *United States v. Menotte*, 484 B.R. 835, 843 n.10 (S.D. Fla. 2012), *aff'd*, *In re Custom Contractors, LLC*, 745 F.3d 1342 (11th Cir. 2014). Because the Internal Revenue Service was required by law to accept the payments from the Debtor, it acted in good faith in accepting those checks to satisfy the tax liability of the Debtor's alter ego.

The United States is not subject to the duties of inquiry that may otherwise may apply to commercial creditors if on notice of some problem. As the sovereign, the United States' obligations are determined solely by the statutes and regulations discussed above. Indeed, Congress explicitly authorized the Internal Revenue Service to collect taxes from insolvent companies and provided additional powers in aid of that collection. *See* 26 U.S.C. §§ 3505(b) (providing liability against lender who pays net payroll of taxpayer's employees), 6311(c)

(providing that the IRS obtains a first-priority lien against a bank that defaults on paying a certified check), and 6861 (affording a power to assess and levy immediately if collection is in jeopardy, including due to insolvency); 31 U.S.C. § 3713 (providing the United States with a super-priority in case of insolvency).  *Cf. Butler v. Lejcar (In re Butler)*, 171 B.R. 321, 328 (Bankr. N.D. Ill. 1994) (holding that a purchaser in a tax sale who acts in conformity with state law is presumed to act in good faith for purposes of section 548(c) notwithstanding the purchaser's awareness of the seller's financial difficulties).

Courts have rejected the notion that receipt of a payment of tax liability from a third party is sufficient to put the Internal Revenue Service on notice, in part, because it places a "virtually impossible burden of inquiring into the source of funds for countless" checks from third parties. *Genova v. Gottlieb (In re Orange Cty. Sanitation),* 221 B.R. 323, 330 (Bankr. S.D.N.Y. 1997). For example, because income from Subchapter S corporations pass directly to shareholders and are then reported on the shareholders' individual income tax returns, it is normal for such corporations to reimburse stockholders for the taxes that pass through to them or to even pay such amounts directly.  *See In re The Heritage Org., LLC*, 413 B.R. 438, 486 (Bankr. N.D. Tex. 2009) (noting that it "makes sense that [stockholders] would expect [the S corporation] to distribute sufficient cash to them from which they, in turn, could pay their tax liability."); *see also* Zolman Cavitch & Matthew P. Cavitch, *Tax Planning for Corporations and Shareholders*, § 3.04[5][a] (Matthew Bender Feb. 2013) ("It is not uncommon for the shareholders of an S corporation to enter into an agreement requiring the corporation to make annual distributions at least sufficient to cover their flow-through tax liability.") (Matthew Bender 2013); Deborah H. Schenk, *Federal Taxation of S Corporations*, § 8.08 ("[S]tockholders in an S corporation often enter into an agreement with the corporation requiring distributions.") (L.J. Press 2013).  The

9

foregoing observations about S corporations that may have multiple shareholders applies with even greater force to single-member LLCs. Requiring the IRS to launch an investigation every time it received a check from a person or entity other than the taxpayer – particularly a wholly-owned entity – would exhaust the public treasury and there is no basis to hold the United States to that standard.

In any event, even a commercial creditor would not have been under a duty to investigate as to possible fraud under the facts of this case. A creditor has no "duty to investigate, to be a monitor for creditors' benefit when nothing known so far suggests that there is a fraudulent conveyance in the chain." *Bonded Fin. Serv. v. Eur. Am. Bank*, 838 F.2d 890, 898 (7th Cir. 1988). In *Brandt v. Horseshoe Hammond, LLC (In re Equipment Acquisition Res.)*, the Seventh Circuit Court of Appeals addressed an alleged fraudulent transfer to a casino that accepted a payment from a customer using corporate funds. 803 F.3d 835, 843 (7th Cir. 2015). Because the casino had no indication that the transferee was insolvent, the court held that the transferee had no duty to investigate. *Id.*

## CONCLUSION

As the alter ego of Daniel and Jeffrey Michael, the Debtor was liable for any tax liabilities of Daniel or Jeffrey Michael had, and thus its payment of their taxes was a payment for an antecedent debt under § 548(d)(2)(A) and otherwise constituted a payment for reasonably equivalent value. Further, the United States acted in good faith when it received the payments from the Debtor. Because under the facts as alleged, the Debtor received reasonably equivalent value for the payments and the United States acted in good faith in receiving the payments, Section 548(c) of the Bankruptcy Code bars the Trustee from avoiding those transfers. As such, the United States is entitled to summary judgment.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Tax Division

/s/*Bradley A. Sarnell*
BRADLEY A. SARNELL
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 55
Washington, D.C. 20044
202-307-1038 (v)
202-514-5238 (f)
Bradley.A.Sarnell@usdoj.gov