UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Horizon Group Management, LLC,<br><br>    Debtor. | Case No. 14bk41230<br><br>Chapter 7 |
| Andrew J. Maxwell, trustee for the estate of Horizon Group Management, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>United States of America,<br><br>    Defendant. | Adversary No. 16ap00465<br><br>Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

### MEMORANDUM DECISION

    The matter before the court is the Defendant United States' Motion for Summary Judgment [Adv. Dkt. No. 69] (the "Motion") brought by the defendant, the United States of America (the "United States"), seeking summary judgment on the United States' affirmative defense under 11 U.S.C. § 548(c) to both of the two counts in the Complaint [Adv. Dkt. No. 1] (the "Complaint"), filed by the plaintiff Andrew J. Maxwell (the "Trustee"), as chapter 7 trustee for the estate of Horizon Group Management, LLC (the "Debtor"). The Motion has been fully briefed and argued before the court on May 11, 2020 (the "Hearing").

    In the above-captioned adversary proceeding (the "Adversary Proceeding"), the Trustee seeks to avoid and recover a series of five prepetition payments made by the Debtor to the Internal Revenue Service (the "IRS") as fraudulent transfers, under theories of actual (count I) and constructive (count II) fraud. *See* Compl., at pp. 87–89. The United States has answered, in pertinent part, that it is a good faith transferee for value under 11 U.S.C. § 548(c) and therefore has an affirmative defense to both counts. *See* Defendant United States' Answer, at p. 1 [Adv. Dkt. No. 14] (the "Answer").

    For the reasons set forth more fully below, upon review of the respective filings, the court concludes that the United States is entitled to summary judgment on the first element of the section 548(c) defense, that the IRS received the transfers in good faith, but that the United States is not entitled to judgment as a matter of law on the second element of the section 548(c) defense, that

the Debtor received value in exchange for the transfers. The Motion will, therefore, by separate order entered concurrently herewith, be granted in part and denied in part.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred has statutory authority to enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1), (c). Absent consent, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

In addition to the foregoing considerations, a bankruptcy judge must also have constitutional authority to hear and determine a matter. *Stern v. Marshall,* 564 U.S. 464 (2011). Constitutional authority exists when a matter originates under the Bankruptcy Code or, in noncore matters, where the matter is either one that falls within the public rights exception, *id.*, or where the parties have consented, either expressly or impliedly, to the bankruptcy court hearing and determining the matter. *See, e.g., Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1939 (2015) (parties may consent to a bankruptcy court's jurisdiction); *Richer v. Morehead,* 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough").

As a proceeding to determine, avoid or recover fraudulent transfers pursuant to section 548 of the Bankruptcy Code is a matter arising under the Bankruptcy Code, the Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(H). It follows that a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure to adversary proceedings, is also a core proceeding pursuant to 28 U.S.C. §§ 157(b)(1) & (2).[1] Further, in accordance with *Stern,* 564 U.S. at 499, the bankruptcy court has constitutional authority to determine fraudulent transfer claims as such claims "are at the core of the federal bankruptcy power." *KHI Liquidation Tr. v. Wisenbaker Builder Servs., Inc. (In re Kimball Hill, Inc.),* 480 B.R. 894, 907 (Bankr. N.D. Ill. 2012) (Barnes, J.); *see also Bodenstein v. Univ. of N. Iowa (In re Peregrine Fin. Grp., Inc.),* 589 B.R. 360, 364–65 (Bankr. N.D. Ill. 2018) (Doyle,

---

[1] The Federal Rules of Civil Procedure will be referred to herein individually as "Civil Rule ___." The Federal Rules of Bankruptcy Procedure will be referred to herein individually as "Bankruptcy Rule ___."

2

J.). Each of the parties has also either expressly or impliedly consented to this court's exercising authority over this matter. In light of the foregoing, the court concludes that it has constitutional authority to finally decide the Motion either directly or through the parties' consent.

Accordingly, the court has the jurisdiction, statutory authority and constitutional authority to hear and determine the Motion.

BACKGROUND

The following background reflects the undisputed facts contained in the submissions of the parties and the uncontroverted facts contained in the Defendant United States' Statement of Material Facts Not in Dispute [Adv. Dkt. No. 69-1] (the "United States' Statement of Facts") and the Trustee's Response to Statement of Material Facts Not in Dispute [Adv. Dkt. No. 75-1] (the "Trustee's Statement of Facts"). Bankr. N.D. Ill. R. 7056-2.

The Debtor made five payments totaling $50,073.00 to the IRS during the two-year period preceding the filing of the Debtor's petition on account of tax liabilities for the 2012 and 2013 tax years owed by the Debtor's principal and manager, Daniel Michael ("Daniel") and his wife, and by one of the Debtor's officers and Daniel's son, Jeffrey Michael ("Jeffrey") and his wife. Specifically, the Debtor made the following payments to the IRS in the two years preceding the filing of the Debtor's petition: $5,300.00 to the IRS on December 5, 2020 for Daniel and his wife's 2012 taxes, U.S. Stmt. of Facts, at ¶ 11a; $9,000.00 on April 15, 2013 for Daniel and his wife's 2012 taxes, *id.*, at ¶ 11b; $20,000.00 on April 15, 2013 for Jeffrey and his wife's 2013 taxes, *id.*, at ¶ 11c; $8,573.00 on June 14, 2013 for Daniel and his wife's 2013 taxes, *id.*, at ¶ 11d; and $7,200.00 on September 9, 2013 for Daniel and his wife's 2013 taxes. *Id.*, at ¶ 11e; *see also* Tr. Stmt. of Facts, at ¶ 11.

The sole member of the Debtor, an Illinois LLC, is the Daniel Michael Living Trust u/t/a/d March 4, 1998, for which Daniel is the sole trustee. U.S. Stmt. of Facts, at ¶¶ 5–6. Daniel nonetheless holds himself out as the owner of the Debtor. *Id.* During the two years prior to the filing of the Debtor's petition, Daniel was the sole manager of the Debtor, *id.*, at ¶¶ 7–9, and Jeffrey was the chief operating officer and general counsel for the Debtor. *Id.*, at ¶ 10. During such period, the Debtor did not issue any ownership interests or securities. *Id.*, at ¶ 12. The Debtor held no manager or member meetings and did not keep records of any consent in lieu of such meetings during such period. *Id.*, at ¶ 14. Likewise, the Debtor failed to document material transactions, *id.*, at ¶ 15, and failed to keep capital account records for its members. *Id.*, at ¶ 16. The Debtor also failed to prepare contemporaneous profit and loss statements and failed to keep complete records of its accounts payable and receivable. *Id.*, at ¶¶ 17–19. The Debtor also failed to keep records of services provided to other entities owned and operated by Daniel. *Id.*, at ¶ 20. During the same two-year period, the Debtor paid personal expenses of Daniel and Jeffrey using funds commingled with the funds of other entities owned and operated by Daniel, and Daniel and Jeffrey each caused the Debtor to divert its assets for each of their personal benefit, to the detriment of the Debtor's creditors. *Id.*, at ¶¶ 21–23. The Debtor and the related entities owned and operated by Daniel were, therefore, the alter ego of Daniel and Jeffrey during the two years preceding the filing of the Debtor's petition. *Id.*, at ¶ 24.

PROCEDURAL HISTORY

The Debtor filed its bankruptcy petition on November 14, 2014 (the "Petition Date"). *In re Horizon Mgmt. Grp., LLC*, Case No. 14bk41230 (Bankr. N.D. Ill. filed Nov. 14, 2014) (Barnes, J.).

On July 15, 2016, the Trustee commenced the Adversary Proceeding against the United States in order to recover the transfers made by the Debtor to the IRS in the two years preceding the Petition Date. The United States filed its answer on November 16, 2016, in which it raised its section 548(c) defense to the Trustee's claims. Answer, at p. 1.

The United States now moves for summary judgment on its affirmative defense under section 548(c), on the ground that the IRS was a good faith transferee for value. Specifically, the United States contends that the IRS is presumed to receive tax payments in good faith and was under no duty to inquire further regarding the payments, or in the alternative that there was no information available to the IRS sufficient to put it on inquiry notice. Memorandum of Law in Support of the United States' Motion for Summary Judgment, at pp. 7–10 [Adv. Dkt. No. 69-2] (the "United States' Memorandum of Law"). Next, the United States argues that the IRS gave value in exchange for the transfers because the payments released the Debtor from an antecedent debt, as the Debtor was the alter ego of Daniel and Jeffrey and so liable for Daniel and Jeffrey's own income-tax obligations, or in the alternative, as to Daniel's tax liability only, because the Debtor was liable for such taxes due to its status as a disregarded entity. *Id.* at pp. 3–6.

The Trustee, in opposing the Motion, filed his Memorandum in Opposition to Motion for Summary Judgment [Adv. Dkt. No. 75] (the "Trustee's Response"). In the Trustee's Response, the Trustee responds only to the United States' arguments that the IRS gave value to the Debtor in exchange for the transfers. In particular, the Trustee argues that the United States cannot use a reverse alter ego to establish value for purposes of a section 548(c) defense, as a reverse alter ego argument is ordinarily asserted offensively, for example, in a collection action by the United States to recover overdue taxes. Tr. Resp., at pp. 6–10. Further, the Trustee contends that even though the Debtor is a disregarded entity for tax purposes, that does not make the Debtor liable for the portion of the income taxes of its principals or officers that are attributable to the Debtor's income. *Id.* at p. 4.[2] Finally, the Trustee argues that a genuine dispute of material fact exists as to whether the Debtor's income substantially contributed to Daniel and his wife's income tax liability, as Daniel's complete returns are not in evidence. The Trustee argues that, based on the available transcripts, the Debtor's net income did not substantially contribute to Daniel and his wife's income tax liability for the relevant tax years because Daniel and his wife had negative adjusted gross incomes in such years. Last, the Trustee argues that non-Debtor entities generated the bulk of the taxable activity reflected on Daniel and his wife's transcripts for the relevant years. *Id.* at pp. 4–6; *compare* U.S. Stmt. of Facts, at ¶ 13 *with* Tr. Stmt. of Facts, at ¶ 13.

The United States replies that it is possible to use an alter ego theory to show value for purposes of the section 548(c), based on the special collection remedies afforded the IRS and the public interest in collecting taxes and protecting the public fisc, which outweighs any unfairness to other creditors in the underlying bankruptcy case. Defendant United States' Reply in Support of Its Motion for Summary Judgment [Adv. Dkt. No. 78] (the "United States' Reply to the Trustee"), at pp. 5–10. Further, the Debtor's liability for Daniel and his wife's income taxes is based not on the

---

[2]     The court discusses below in more detail what reverse alter ego claims and disregarded entities are.

Internal Revenue Code, but on an "implied contractual obligation" of the Debtor to pay the taxes its activities caused Daniel to owe. *Id.* at pp. 1–2. Finally, there is no dispute of fact as to what portion of the Debtor's income contributed to Daniel's tax liability, as the Debtor's income nonetheless gave rise to self-employment tax liability for Daniel during the relevant tax years, despite Daniel's negative adjusted gross income. *Id.* at pp. 2–3.

In addition to the Trustee's Response, the court has also considered the Horizon Defendants' Response to the United States' Motion for Summary Judgment [Adv. Dkt. No. 74] (the "Nonparty Response") filed by Daniel Michaels, Martha Michaels, Jeffery Michaels and certain entities[3] (the "Nonparty Respondents") associated the Debtor,[4] which has been replied to in the Defendant United States' Reply to Non-Parties' Response to Its Motion for Summary Judgment [Adv. Dkt. No. 79] (the "United States' Reply to the Nonparty Respondents"). The Nonparty Respondents, without seeking to intervene in the Adversary Proceeding, ask the court to refrain from making any determination, when ruling on the Motion, as to whether the Debtor was the alter ego of Daniel and Jeffrey, on the ground that such a determination might adversely affect their ability to defend against the Trustee's claims in *Maxwell v. Michael*. Nonparty Resp., at pp. 2–3. The United States does not respond to the merits of the Nonparty Response, but instead asks the court to treat the Nonparty Response as a motion for leave to intervene in the Adversary Proceeding. U.S. Reply to Nonparty Resp., at pp. 1–2.

On May 11, 2020, the court conducted the Hearing, at which counsel for the United States, the Trustee and the Nonparty Respondents presented oral argument in support of their respective positions. At the conclusion of the Hearing, the court took the matter under advisement.

In considering the Motion and the accompanying filings and exhibits, the court has taken into the account the arguments at the Hearing and has also reviewed and considered the following:

(1) The Complaint;

(2) The Answer;

(3) The Trustee's Response;

(4) The Nonparty Response;

(5) The United States' Reply to the Trustee; and

(6) The United States' Reply to the Nonparty Response.

---

[3] Horizon Group I, LLC, Horizon Group II, LLC, Horizon Group III, LLC, Horizon Group IV, LLC, Horizon Group VI, LLC, Horizon Group VII, LLC, Horizon Group VIII, LLC, Horizon Group IX, LLC, Horizon Group X, LLC, Horizon Group XI, LLC, Horizon Group XV, LLC, Horizon Group XVI, LLC, Horizon Group XVII, LLC, Horizon Group XVIII, LLC, Horizon Group XIX, LLC, Horizon Group XX, LLC, Horizon Group XXI, LLC, Horizon Group XXII, LLC, and Horizon Group Realty Holdings, LLC.

[4] The Nonparty Respondents are defendants in a separate adversary proceeding brought by the Trustee, *Maxwell v. Michael*, Adv. No. 16bk00394 (Bankr. N.D. Ill. filed July 1, 2016) (Barnes, J.) ("Maxwell v. Michael").

5

The court has taken into consideration all exhibits and other filings submitted in conjunction with the foregoing. While these items are not an exhaustive list of the filings in the Adversary Proceeding, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

APPLICABLE LAW

A. <u>Judgment on the Pleadings Under Fed. R. Civ. P. 12(c)</u>

While the United States primarily proceeds on the section 548(c) defense, it also attacks count II of the Complaint on the ground that section 548(b), the statutory subsection cited in the heading introducing count II, *see* Compl. at p. 88, is inapplicable to the instant facts. U.S. Mem. of L., at pp. 2–3. Section 548(b) provides a cause of action for the trustee of a debtor that is a partnership to recover a prepetition fraudulent transfer to a general partner when the debtor was insolvent, and the Debtor here is not a partnership nor is the transferee of the transfers an insider of the Debtor. *See id.*

It is not entirely clear whether the United States actually seeks summary judgment on count II on the above ground, as the argument appears to be, in essence, that the Trustee has failed to state a claim for relief under section 548(b). While such a motion is first and foremost a request for dismissal under Rule 12(b)(6) and is ordinarily brought before any responsive pleading is filed, see Fed. R. Civ. P. 12 ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."), it may also be brought after filing of the complaint and answer under Rule 12(c) as one for judgment on the pleadings. Fed. R. Civ. P. 12(h)(2)(B); *Moss v. Martin,* 473 F.3d 694, 698 (7th Cir. 2007).

Under Rule 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).

> "A motion for judgment on the pleadings under Rule 12(c) ... is governed by the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Adams v. Indianapolis,* 742 F.3d 720, 727–28 (7th Cir. 2014). "To survive a motion to dismiss under Rule 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

*Levin v. Madigan*, 41 F. Supp. 3d 701, 702 (N.D. Ill. 2014), *aff'd,* Case No. 14-2244, 2014 WL 6736999 (7th Cir. Sept. 30, 2014). Still, should a motion under Rule 12(c) present "matters outside the pleadings," the court is directed to treat such motion under the standards of summary judgment. Fed. R. Civ. P. 12(d).

Here, as discussed below, the United States' argument in this regard is based solely on the shape of the pleadings. It presents no matters outside the pleadings. As such, the court treats the United States' challenge to the sufficiency of count II as a Rule 12(c) motion on the ground that count II fails to state a claim for relief under section 548(b).

6

B.        Summary Judgment under Fed. R. Civ. P. 56

Summary judgment is appropriate if: first, on the pleadings, moving papers and affidavits or other evidence submitted therewith there is no genuine issue of material fact; and, second, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(e) (made applicable to the Adversary Proceeding by Bankruptcy Rule 7056); *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018). The burden of proof on summary judgment rests squarely on the movant. *EEOC v. Watkins Motor Lines, Inc.*, 553 F.3d 593, 596 (7th Cir. 2009); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 921–22 (7th Cir. 2007).

The purpose of summary judgment is to enable the early disposition of purely legal issues (or the early legal disposition of an entire matter) where there is no evidentiary dispute necessitating a trial. *Weber-Stephen Prods. LLC v. Sears Holding Corp.*, Case No. 13cv01686, 2015 WL 9304343, at *4 (N.D. Ill. Dec. 22, 2015); *Newman v. Assoc. Bank, Nat'l Ass'n (In re World Mktg. Chi., LLC)*, 574 B.R. 670, 677 (Bankr. N.D. Ill. 2017) (Barnes, J.).

The movant must, with citation to materials in the record, demonstrate that no genuine dispute of material fact exists. Fed. R. Civ. P. 56(c)(1); *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 601 (7th Cir. 2015). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original); *World Mktg.*, 574 B.R. at 677.

To be genuinely at issue, the disputed fact must be outcome determinative under governing law. *Sylvester v. Martin (In re Martin)*, 130 B.R. 930, 937 (Bankr. N.D. Ill. 1991) (Schmetterer, J.) (*citing Anderson*, 477 U.S. at 248). Put another way, a genuine issue of material fact exists if, after a resolution of the disputed fact by the factfinder (but not before), "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 258; *Dunn*, 880 F.3d at 905. The court makes this determination under the standard that would be used at trial. *Valley Liquors, Inc. v. Renfield Imps., Ltd.*, 822 F.2d 656, 659 (7th Cir. 1987) (*citing Anderson*, 477 U.S. at 252).

Summary judgment motions "are usually . . . decided on documentary evidence." *Anderson*, 477 U.S. at 251 (internal quotations omitted). At this stage, "it is not the court's function to resolve factual disputes or to weigh conflicting evidence." *Chi. Reg'l Council of Carpenters Pension Fund v. Jerald Van Der Laan (In re Van Der Laan)* 556 B.R. 366, 372 (Bankr. N.D. Ill. 2016) (Schmetterer, J.) (citations omitted); *see also Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994) ("[T]he appropriate proceedings for such fact-finding is a bench trial and not the disposition of a summary judgment motion."). It is outside the judge's province to assess the credibility of evidence on a summary judgment motion. *Anderson*, 477 U.S. at 255. Nonetheless, the court, if needed, must make preliminary, nonbinding determinations of what is or is not admissible evidence. *See id.* at 248. It is necessary for the court to consider at this stage what material facts are undisputed, whether by express agreement or by failure to carry a party's burden with respect thereto. *See, e.g., Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

The court in considering summary judgment motions construes the evidence and all reasonable inferences in favor of the non-moving party. *Durable Mfg. Co. v. U.S. Dep't of Labor,* 578 F.3d 497, 501 (7th Cir. 2009). When a material fact or set of facts gives rise to competing, but

7

reasonable, inferences, then there is a genuine issue that precludes summary judgment. *Coles v. City of Chicago,* 361 F. Supp. 2d 740, 741–42 (N.D. Ill. 2005).

Further, a complaint is not insufficient simply because it fails to anticipate an affirmative defense under section 548(c) and plead the required elements thereunder. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (as defendants bear the burden on affirmative defenses, it is inappropriate to penalize the plaintiff for failing to anticipate such defenses in a complaint); *Brownmark Films, LLC v. Comedy Partners,* 682 F.3d 687, 690 (7th Cir. 2012). ("The mere presence of a potential affirmative defense does not render the claim for relief invalid.").

Of course, if all the facts necessary to establish the affirmative defense are in a complaint, the plaintiff has pled herself out of court, and the complaint fails. *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Also, when a movant seeks summary judgment on an affirmative defense, the nonmovant is ill-advised to do nothing in response. As the movant's allegations of facts not in dispute will be admitted unless controverted, Bankr. N.D. Ill. R. 7056-2(B); *First Commercial Fin. Grp. v. Hermanson (In re Hermanson)*, 273 B.R. 538, 550 (Bankr. N.D. Ill. 2002) (Barliant, J.), a nonmovant must act or risk being foreclosed.

On a motion for summary judgment on a particular claim or defense, the court may grant summary judgment with respect to certain elements of such claim or defense, even if the court does not grant all of the relief requested. Fed. R. Civ. P. 56(a), (g); *U.S. Bank Nat'l Ass'n v. Builders Bank*, Case No. 08-C-5648, 2011 WL 1103875, at *6 (N.D. Ill. Mar. 25, 2011); *Cord v. Jaspan Schlesinger Hoffman, LLP (In re Monahan Ford Corp. of Flushing)*, 390 B.R. 493, 501 (Bankr. E.D.N.Y. 2008) ("Although ultimate judgment cannot be awarded unless all elements are established, nothing prevents the court, under [Civil] Rule 56(a), from awarding summary judgment on the first two elements of the claim, where, as here, none of the material facts necessary to establish those elements are in dispute.").

C. Good Faith Purchaser Affirmative Defense under 11 U.S.C. § 548(c)

The bulk of the United States' summary judgment request rests on its affirmative defense under section 548(c). Section 548(c) provides that:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, *a transferee or obligee of such a transfer or obligation that takes for value and in good faith* has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

11 U.S.C. § 548(c) (emphasis added).

As the emphasized language makes clear, section 548(c) has two initial requirements, that the transferee or obligee of such transfer "takes for value" and that the transferee or oblige of such transfer take "in good faith." *Bank of Am., N.A. v. Veluchamy*, 535 B.R. 783, 796 (N.D. Ill. 2015), *aff'd sub nom. In re Veluchamy*, 879 F.3d 808 (7th Cir. 2018).

"'[G]ood faith' requires the transferee to have engaged in the transaction without knowledge of its voidability or fraudulent nature (*i.e.* that the transfer was intended to defraud the transferor's creditors)." *Veluchamy*, 535 B.R. at 796. While the Bankruptcy Code

8

does not define good faith, *Veluchamy* and others point out that guidance is in abundance in the case law. *Id.* (*citing CLC Creditors' Grantor Tr. v. Howard Sav. Bank* (*In re Commercial Loan Corp.*), 396 B.R. 730, 745 (Bankr. N.D. Ill. 2008) (Goldgar, J.); *Bonded Fin. Servs., Inc. v. European Am. Bank,* 838 F.2d 890, 897–98 (7th Cir. 1988) ("Venerable authority has it that the recipient of a voidable transfer may lack good faith if he possessed enough knowledge of the events to induce a reasonable person to investigate.")).

As this court has observed, such case law provides that, in the context of a section 548(c) defense, good faith includes an objective component. *Brandt v. KLC Fin., Inc.* (*In re Equip. Acquisition Resources, Inc.*), 481 B.R. 422, 429 (Bankr. N.D. Ill. 2012) (Barnes, J.). Specifically, the test for good faith asks whether the transferee was placed on inquiry notice regarding the fraudulent nature of the transfer and if so, whether the transferee was diligent in its investigation regarding the transfer. *Bears, Stearns Sec. Corp. v. Gredd* (*In re Manhattan Inv. Fund Ltd.*), 397 B.R. 1, 22–23 (S.D.N.Y. 2007). To determine whether a transferee was put on inquiry notice, the court examines whether the transferee was aware of "suspicious facts that would have led a reasonable [person], acting diligently, to investigate further and by doing so discovery wrongdoing." *Grede v. Bank of N.Y. Mellon Corp.* (*In re Sentinel Mgmt. Grp., Inc.*), 809 F.3d 958, 961 (7th Cir. 2016).

The United States' challenges to whether inquiry notice exists under the present facts and its novel argument that the United States should never be subject to inquiry notice on tax payments will be discussed below.

The United States also seeks summary judgment on the first element of its section 548(c) affirmative defense, that it took the tax payments for value. Under section 548, "'value' means property, or satisfaction or securing of a present or antecedent debt of the debtor but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

Specifically, later language in section 548(c) makes clear that the value in question is "value to the debtor," not simply value in general. 11 U.S.C. § 548(c); *accord Covey v. Commercial Nat. Bank of Peoria*, 960 F.2d 657, 662 (7th Cir. 1992). Value to or from a third party is not sufficient. *In re 1031 Tax Grp., LLC*, 439 B.R. 47, 73 (Bankr. S.D.N.Y.), *supplemented,* 439 B.R. 78 (Bankr. S.D.N.Y. 2010) ("[T]he literal language of section 548(c) requires the *transferee* to give value to the debtor, not a third party.") (emphasis in original); *In re Burry*, 309 B.R. 130, 138 (Bankr. E.D. Pa. 2004) ("[T]ransfers made solely for the benefit of a third party do not furnish reasonably equivalent value.").

Here the United States argues that there was a benefit to the Debtor resulting from the Debtor's payment of taxes owed by Daniel, Jeffrey and their spouses, either because the tax that was paid was ultimately owed by the Debtor directly under alter ego theory or indirectly as the party who generated the tax liability or, in the alternative, released the Debtor from an antecedent obligation.

To succeed, the United States must show both that there is no material fact in dispute regarding these determinations and that it is entitled to judgment on the theories raised.

DISCUSSION

As noted above, the Motion challenges the sufficiency of count II of the Complaint and asserts that summary judgment is appropriate on both counts I and II of the Complaint under the

9

United States' good faith affirmative defense. The court will consider each of these in turn. In closing, the court will address the Nonparty Response and the United States' Reply to the Nonparty Response.

A.    <u>The United States' Challenge to Count II Under Fed. R. Civ. P. 12(c)</u>

The court treats the United States' challenge to the sufficiency of count II as a Rule 12(c) motion on the ground that count II fails to state a claim for relief under section 548(b).

Even so treated, the United States' challenge in this regard fails.

As discussed above, to survive dismissal on these grounds the Complaint must state a claim whose nature is plausible on its face. *Levin*, 41 F. Supp. 3d at 702 (*citing Twombly,* 550 U.S. at 570; *Adams*, 742 F.3d at 727–28).

The substance of the allegations in a pleading, not the headings or titles, govern the nature of the claim. *See, e.g.*, *Briggs v. Oklahoma*, 472 F. Supp. 2d 1288, 1292 (W.D. Okla. 2007) ("The substance of a party's pleadings, not the title he employs, controls the issues to be adjudicated."); *Community Banks v. Start Properties, LLC (In re Jarisian)*, 314 B.R. 318, 327 (Bankr. E.D. Pa. 2004) ("Pleadings under the Federal Rules are to be judged by their content or substance rather than by mere form or label.").

True, count II is labeled in its heading as a claim under section 548(b). The allegations seek, however, to recover on a claim for avoidance of a constructively fraudulent transfer under section 548(a)(1)(B). *See* Compl., at pp. 88–89. Specifically, count II alleges the following: (1) the Debtor made certain transfers of its property to the IRS within two years of the petition date; (2) the Debtor received less than a reasonably equivalent value in exchange for such transfers; and (3) the Debtor was insolvent at the time of such transfers, became insolvent as a result of such transfers, the Debtor was or was about to be unreasonably undercapitalized or was about to become equitably insolvent. *Id.*

Such allegations directly track the elements of constructive fraud found in section 548(a)(1)(B)(i)–(ii) and, as the United States acknowledges, the rest of the factual allegations in the Complaint are meant to support fraudulent transfer claims under section 548(a)(1)(A) or (B), not section 548(b). *See* 11 U.S.C. § 548(a)(1)(B). A single citation to the wrong subsection of a statute, especially one in a heading only, will not defeat what appears to otherwise be a well-plead claim. *See, e.g.*, *Briggs*, 472 F. Supp. 2d at 1292. The Complaint contains, in other words, sufficient allegations to put the United States on notice of the nature of the claim asserted in count II and plausibly state a claim for the relief sought.

Accordingly, to the extent the Motion seeks judgment on count II of the Complaint on the ground that such count fails to state a claim, the Motion is not well taken and will be denied.

B.    <u>The United States' Challenge to Counts I and II Under Its Section 548(c) Defense</u>

The bulk of the United States' challenge is, however, a request for summary judgment on its affirmative defense under section 548(c). As discussed above, section 548(c) has two initial requirements, that the transferee or obligee of such transfer "takes for value" and that the transferee or oblige of such transfer take "in good faith." *Veluchamy*, 535 B.R. at 796.

10

The court will consider each of these requirements, beginning with the good faith requirement.

    1.    *The United States Has Met Its Burden to Establish That the IRS Accepted the Transfers in Good Faith*

At the outset, the court is concerned with the United States' request given that the Seventh Circuit has held a determination of good faith under section 548(c) to be factual determination. *Covey*, 960 F.2d at 662 ("Good faith is a finding of fact, and such findings must stand unless clearly erroneous.").

It is not appropriate at the stage of summary judgment for a court to determine facts. *Casey*, 32 F.3d at 1099; *Van Der Laan*, 556 B.R. at 372. However, whether or not a fact is disputed may certainly be considered now, and the court may weigh the evidence to determine whether a genuine dispute exists. *Anderson*, 477 U.S. at 248; *Little*, 71 F.3d at 641; *see also, e.g.*, *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 899 n.2 (N.D. Ill. 2010) ("In determining what is disputed, we focus not only on whether the parties profess to dispute a fact, but also on the evidence the parties offer to support their statements. When we cite as undisputed a statement of fact that a party has attempted to dispute, that reflects our determination that the evidence does not show that the fact is in genuine dispute.").

Further, as partial summary judgment is an available remedy, Fed. R. Civ. P. 56(a), (g); *Builders Bank*, 2011 WL 1103875, at *6; *Cord*, 390 B.R. at 501, the aspects of the United States' defense that are purely legal determinations can be determined at this point, if appropriate.

The United States raises two arguments as to why the IRS received the transfers in good faith.

First, the United States argues that there were no material facts in dispute here that would put the IRS on inquiry notice. U.S. Mem. of L., at pp. 7–9. In that regard, the United States argues that the mere receipt of a payment by a third party for the tax liability of another, without more, is insufficient to put the IRS on inquiry notice. *Id.* at pp. 9–10.

Second, the United States argues that, as a matter of nonbankruptcy law, the IRS is compelled to accept all tax payments made in a lawful manner. As such, the United States claims that it has no duty under nonbankruptcy law to inquire further regarding the source of tax payments. In other words, the United States argues that as the IRS is presumed to act in good faith outside of bankruptcy, the IRS should enjoy the same presumption for purposes of the section 548(c) defense. *Id.*, at pp. 7–9.

It should be noted here that the Complaint is largely silent as to these theories. As discussed above, a plaintiff need not anticipate affirmative defenses. *Benson*, 944 F.3d at 645; *Brownmark Films*, 682 F.3d at 690. However, once a motion for summary judgment by a defendant puts such defense before the court, the plaintiff is ill advised to rest on its complaint. *See, e.g.*, Bankr. N.D. Ill. R. 7056-2(B); *Hyson USA*, 821 F.3d at 939; *Hermanson*, 273 B.R. at 550.

The United States argues that nothing other than the difference in payee and obligee appears on the face of the payments or taxes themselves, for example, the size of the transfers *in se* and relative to the Debtor's income, that would suffice to put the IRS on inquiry notice with respect to

11

the transfers. *Cf. Zazalli v. Swenson (In re DBSI, Inc.)*, 561 B.R. 97, 105 (D. Idaho 2016) (holding that genuine issues of material fact existed as to whether the IRS was put on inquiry notice where, *inter alia*, a debtor paid the taxes of principals and at least one non-principal in relatively high amounts compared to such debtor's income and the tax liability generated thereby), *reversed in part on other grounds*, *Zazalli v. United States (In re DBSI, Inc.)*, 697 Fed. App'x 493 (9th Cir. 2017).

The IRS did nonetheless receive payments from the Debtor, a disregarded entity, on account of income tax liability of its principal and one of its officers.

The United States argues that this fact is not suspicious. Even though the Debtor itself was an entity that was not subject to tax liability—a so-called "disregarded entity," entities which are disregarded for tax purposes may and sometimes do agree to pay certain tax liabilities owed by their principals on account of such entities' activities. *See, e.g.*, *Janssen v. Reschke*, Case No. 17-cv-08625, 2020 WL 1166221, at *5–6 (N.D. Ill. Mar. 11, 2020) (explaining such arrangements generally); *Faulkner v. Kornman (In re the Heritage Organization, L.L.C.)*, 413 B.R. 438, 486 (Bankr. N.D. Tex. 2009) (discussing the business rationales for such arrangements).

All of the foregoing is sufficient for the United States to meet its initial burden on a summary judgment motion to show that no genuine issue of material fact exists and that the United States is entitled to judgment as a matter of law as to this element of the section 548(c) defense.

The Trustee, in response, has not offered any evidence to show any other facts that would have put the IRS on inquiry notice and has not otherwise addressed the merits of this element of the United States' section 548(c) defense. *See* Tr. Resp., at pp. 1–10. As a result, the court must conclude that no genuine issue of material fact exists with respect to the United States' claim that the IRS received the tax payments in good faith. The United States is entitled to partial summary judgment on the good faith element of the section 548(c) defense.

Because the United States has shown entitlement to summary judgment on this element of the section 548(c) defense under the generally-applicable standards for good faith under section 548(c), the court need not address the United States' arguments that the IRS is entitled to special presumption of good faith and that the IRS never has a duty to inquire further into tax payments received from third parties. *Cf. DBSI*, 561 B.R. at 104–05 (rejecting similar arguments in a similar proceeding and procedural context).

    2.    *The United States Has Not Met Its Burden to Show That the IRS Gave Value in Exchange for the Transfers*

On the second requirement, that the IRS took the tax payments "for value" to the Debtor, the United States makes three essential assertions. First, the United States argues that the tax liability paid by the Debtor was ultimately owed by the Debtor as a disregarded entity and thus the payments relieved the Debtor of an obligation to the IRS. Second, the United States argues that the Debtor was nonetheless under some obligation to its principal and officer to pay the taxes and that the payment of the same relieved the Debtor of an antecedent debt. Last, the United States argues that the tax liability owed by Debtor's principal was in fact the Debtor's obligation as the Debtor is an alter ego of its principal.

12

   (a) <u>The Debtor's Liability for Daniel's Taxes Based on the Debtor's Status as a Disregarded Entity</u>

  As to Daniel's tax liability only, the United States contends that the Debtor was a disregarded entity for tax law purposes and therefore liable to the IRS for the tax liability Daniel as the Debtor's sole owner incurred as a result of the Debtor's income. *See* U.S. Mem. of L., at pp. 3–6; U.S. Reply to Tr., at pp. 1–10; *see also* 11 U.S.C. § 548(d) (value includes the satisfaction of a present or antecedent debt of the debtor).

  This argument finds no basis in the existing law.

  It is undisputed that the Debtor is a disregarded entity within the meaning of the Treasury Regulations. 26 C.F.R. § 301.7701-3(b)(ii) (a business entity that is not a corporation, such as a limited liability company ("<u>LLC</u>"), is "disregarded as an entity separate from its owner if it has a single owner."). *See also* 26 C.F.R. § 301.7701-2(c)(2). When an LLC is disregarded for tax purposes, however, the law is clear that the sole owner, here Daniel, is the only person liable for taxes on income generated by the disregarded entity; such income is treated for all intents and purposes as income of the sole owner as if the disregarded entity did not exist. *Janssen*, 2020 WL 1166221, at *5–6; *DBSI*, 561 B.R. at 100–01; *Klein v. Michelle Turpin & Assocs., P.C.*, Case No. 14-cv-00302, 2016 WL 3661226, at *2 (D. Utah July 5, 2016); *Stanziale v. CooperCom, Inc. (In re Conex Holdings, LLC)*, 518 B.R. 792, 802–03 (Bankr. D. Del. 2014).

  The United States relies on other regulations, and IRS guidance thereon, governing foreign business entities that are eligible to be disregarded and the liability of a disregarded entity for taxes other than income tax, such as employment tax. *See* U.S. Mem. of L., at pp. 5–6. These regulations, explain that such disregarded foreign business entities may still be liable for *non-income* taxes. Not only is the Debtor not the sort of organization targeted by these regulations, but the taxes in question are not the non-income taxes covered. Nothing in these sources stands for the proposition that entities such as the Debtor would be responsible for income taxes. In fact, the opposite conclusion results. *Accord Janssen*, 2020 WL 1166221, at *5–6.

  The United States has therefore failed to carry its burden as movant to obtain summary judgment on this theory.

   (b) <u>The Debtor's Liability for Daniel's Taxes Based on an Implied Contract and the Dispute Regarding the Portion, If Any, of Daniel's Income Tax Liability Attributable to the Debtor</u>

  The United States advances an alternate theory—that the Debtor was liable under an "implied contractual obligation" to pay Daniel (or to pay the IRS on Daniel's behalf) for income taxes Daniel has to pay as a result of the Debtor's income. *See* U.S. Reply to Tr., at pp. 1–2. The United States relies on authority that describes such contractual arrangements between disregarded entities and their principals as being fairly common practice. *See id.* at p. 2 (collecting sources).

  None of the United States' authority, however, appears to stand for the proposition that a disregarded entity, by virtue of its status as such alone, is under such an implied or constructive contractual obligation necessarily or automatically, *i.e.* in the absence of any evidence of such a contract or contractual term.

13

Rather, the question of whether a disregarded entity is otherwise required to make distributions or other payments to members for tax liability based on income generated by the entity (or to pay the IRS for such taxes directly) depends on the terms of the entity's operating agreement or separate contractual agreements, if any. *Janssen*, 2020 WL 1166221, at *5–6 (*citing DBSI*, 561 B.R. at 100–01; *Official Comm. of Unsecured Creditors of SGK Ventures, LLC v. NewKey Grp., LLC (In re SGK Ventures, LLC)*, 521 B.R. 842, 859 (Bankr. N.D. Ill. 2014) (Wedoff, J.)). Even if such an agreement exists, payments made under it may well be the equivalent of a discretionary dividends, not a contractual obligations. *See Janssen*, 2020 WL 1166221, at *5–6; *SGK Ventures*, 521 B.R. at 859.

The United States has presented no evidence to show the existence or terms of any such agreement, express or implied, under the facts of the Adversary Proceeding, beyond the above-mentioned authorities standing at most only for the general propositions that such agreements may be advisable for tax purposes and are relatively common. Given the lack of any evidence to show the existence or terms of such an agreement, however, summary judgment is not appropriate at this time. Payments by a disregarded entity like the Debtor to its principals (or to the IRS directly) to satisfy the income tax liability of such principals do not necessarily or automatically result in value for such disregarded entity in the absence of such an agreement.

Accordingly, the United States has not met its burden on summary judgment as to the value element with regard to this implied contract theory.

As a result of the foregoing, in the absence of a showing by the United States that the Debtor was under an obligation to either the IRS or Daniel to pay Daniel's taxes, the dispute regarding the portion, if any, of Daniel's income taxes that may be attributable to income derived from the Debtor's activities, is immaterial and need not be resolved by the court in ruling on the Motion. *See* Tr. Resp., at pp. 4–6 (arguing that even if the Debtor were liable for Daniel's income taxes, the evidence does not show that Daniel incurred any income tax liability based on the Debtor's activities); *see also* U.S. Reply to Tr., at pp. 2–4.

(c) <u>The Debtor as the Alter Ego of Daniel and Jeffrey</u>

The United States' third theory rests on the contention that the Debtor was liable for Daniel and Jeffrey's income taxes because the Debtor was Daniel and Jeffrey's alter ago. *See* U.S. Mem. of L., at pp. 3–5; U.S. Reply to Tr., at pp. 5–10. As such the United States contends that tax paid was equally the Debtor's liability as a matter of law. *See* U.S. Mem. Of L., at pp. 3–5; U.S. Reply to Tr., at pp. 5–10.

The Trustee does not dispute that the Debtor was the alter ego of Daniel and Jeffrey, but rather contends that such a theory cannot be used as a basis to establish that the IRS gave value in exchange for the transfers. *See* Tr. Resp., at pp. 6–10. However, the Trustee's position does not comport with applicable law, which provides that reverse alter ego may be applied in this context if certain conditions are met. *Barber v. Production Credit Servs. (In re KZK Livestock)*, 221 B.R. 471, 478 (Bankr. C.D. Ill. 1998) (*citing In re Marquis Prods., Inc.*, 150 B.R. 487 (Bankr. D. Me. 1993)) ("While it is well established that a transfer made solely for the benefit of a third party is not usually made for reasonably equivalent value, exceptions exist . . . where the debtor and the third party share an 'alter-ego' relationship, such that consideration to one is consideration to the other and thus constitutes a direct benefit.").

14

To establish that the IRS gave value in exchange for the transfers using a such an alter ego theory,[5] the United States must show that "'there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and [that] adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'" *Paloian v. Geneva Seal, Inc.* (*In re Canopy Fin., Inc.*), 477 B.R. 696, 703 (N.D. Ill. 2012) (*quoting Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 378 (7th Cir. 2008)).

As to the first factor, that the entities share "such a unity of ownership that the separate personalities of the corporation and the individual no longer exist," factors to consider include common or shared ownership, commingling of assets, failure to observe corporate formalities and undercapitalization. *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 521–22 (7th Cir. 1991).

In the Adversary Proceeding, the Trustee has admitted that the Debtor was undercapitalized, that it failed to observe numerous corporate formalities and to keep regular records of its activities and that its assets were commingled with the other Horizon entities and diverted for Daniel and Jeffrey's personal use. *See* U.S. Stmt. of Facts, Exh. F, Trustee's Answers to Defendant's Request[s] for Admission, at pp. 1–6.

This is sufficient to establish the first factor for the purposes of the Adversary Proceeding.

The United States has failed to show, however, on the facts present in the Adversary Proceeding, that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Canopy Fin.*, 477 B.R. at 703.

The United States contends that the injustice which justifies piercing the veil in this context is the harm to the public that would be caused by forcing the IRS to return the transfers and the expense and inconvenience of making the IRS collect through the bankruptcy process with the rest of the creditors in the underlying bankruptcy case. *See* U.S. Reply to Tr., at pp. 6–7. However, "[t]he mere fact that defendants stand to lose money is insufficient to constitute a fraud or injustice requiring the Court to pierce the corporate veil." *Canopy Fin.*, 477 B.R. at 704.

This general principle is all the more applicable in the bankruptcy context, where there are numerous creditors and a specific statutory scheme governing the collection and distribution of estate assets to such creditors. *See id.*; *KZK Livestock*, 221 B.R. at 479; *DBSI*, 561 B.R. at 103. In the bankruptcy context, in the absence of a strong or particularized showing of fraud or injustice, *i.e.* something more than the financial harm that any defendant-creditor faces, allowing a defendant in an avoidance action to use a reverse veil piercing theory defensively would engender a more unjust result than allowing, at the summary judgment stage, such action to proceed to trial. *See Canopy Fin.*, 477 B.R. at 704; *KZK Livestock*, 221 B.R. at 479.

---

[5]   To be clear, such an alter ego theory is a rare one. The United States seeks to pierce from the individual principal down to the corporate entity owned by him, as opposed from the corporation up to the principal. As such, this type of alter ego claim is commonly referred to as a reverse alter ego claim. The bankruptcy court explained as follows: "The Government treats the 'alter ego' concept as though it were a mathematical equation; i.e., if A = B, then B = A. It is not that simple. 'Reverse piercing of the corporate veil is a "rarity," and it is rarer yet in bankruptcy.'" *DBSI*, 561 B.R. at 103 (*quoting KZK Livestock*, 221 B.R. at 478).

15

There is no reason to treat the United States any differently than other defendants in this regard. *See DBSI*, 561 B.R. at 103. In *DBSI*, as in the Adversary Proceeding, the case trustee was seeking to avoid certain transfers to the IRS, in part based on an underlying alter ego theory, in order to recover assets to be distributed for the benefits of all creditors according to the priority scheme set forth in the Bankruptcy Code. *Id.* As in the Adversary Proceeding, in *DBSI* "[t]he Government [wa]s attempting to use a 'reverse alter ego' theory to benefit the IRS at the expense of" the other creditors in the underlying bankruptcy case. *Id.* This is expressly the condition that courts seek to prevent. *See Canopy Fin.*, 477 B.R. at 704; *KZK Livestock*, 221 B.R. at 479.

The *DBSI* court rejected the United States' contentions. Here, this court does not, at the summary judgment stage, go that far. Instead, the court simply holds that the facts and arguments presented to the court on summary judgment do not warrant judgment in the United States' favor on this point at this time. The United States has as a result failed to make the necessary showing regarding resulting fraud or injustice that would entitle it to summary judgment on this theory.

C.   The Nonparty Response and the United States' Reply to the Nonparty Response

Finally, the court must consider the issues raised by the Nonparty Response and the United States' Reply to the Nonparty Response. In this regard, the court observes that both the United States and the Nonparty Respondents are being too cute by half with their arguments. Each attempts a result that is clearly available by other means without taking the necessary steps and incurring the necessary burdens.

The Nonparty Respondents ask that the court rule on the Motion without determining whether the Debtor was the alter ego of Daniel and Jeffrey. *See* Nonparty Resp., at pp. 1–2. The Nonparty Respondents contend such a determination would "deprive them of due process and could potentially be construed as creating an inference that is adverse to" them. Nonparty Resp., at p. 2.

Such language appears to be obliquely referencing a hypothetical potential for the Trustee to employ offensive nonmutual issue preclusion in the Trustee's pending avoidance action against the Nonparty Respondents, *Maxwell v. Michael*, based on an order granting the Motion in the Adversary Proceeding. The Nonparty Respondents have cited to no authority to that effect and failed to explain with any specificity how such a result would occur. *See* Nonparty Resp., at pp. 1–2. They make no contention that a determination in the Adversary Proceeding would be binding on them.

Offensive nonmutual issue preclusion is a complex doctrine with a series of difficult elements, none of which are addressed in the Nonparty Response. Without more, the court cannot conclude that it must or should alter its ruling on the Motion in the Adversary Proceeding based only on the Nonparty Respondents' premonition of some potential, ill-defined harm.[6] To the extent the Nonparty Respondents do have some cognizable interest in the Adversary Proceeding, they remain at liberty to seek leave to intervene. The Nonparty Response, however, expressly states that the Nonparty Respondents are not seeking to intervene in the Adversary Proceeding, *see* Nonparty

---

[6]   The United States' Reply to the Nonparty Response also does not address the merits of whether the Nonparty Respondents could or would be adversely affected by an order granting the Motion, under an estoppel theory or otherwise. *See* U.S. Reply to Nonparty Resp., at pp. 1–2.

Resp., at pp. 2–3, and the Nonparty Response fails to contain sufficient content respecting intervention for the court to construe it as a motion to intervene. *See* Nonparty Resp., at pp. 1–3.

The United States replies by asking the court to construe the Nonparty Response as a *de facto* motion for leave to intervene in the Adversary Proceeding, while stating that the United States is not asking the court to join the Nonparty Respondents as necessary parties. *See* U.S. Reply to Nonparty Resp., at pp. 1–2. If the United States wishes to have the Nonparty Respondents joined as defendants in the Adversary Proceeding, the United States also remains free to bring a motion seeking such relief from the court.[7]

In the absence of a motion from either the United States or the Nonparty Respondents seeking specific relief and setting forth the necessary predicates therefor, the court need not address either of these issues.

## CONCLUSION

For the reasons set forth above, by separate order entered concurrently herewith, the Motion will be GRANTED IN PART and DENIED IN PART.

Dated: June 19, 2020

ENTERED:

Timothy A. Barnes
United States Bankruptcy Judge

---

[7] The United States previously brought such a motion on May 30, 2017, *see* Defendant United States of America's Unopposed Motion to Join Necessary Parties Under Rule 19(a)(2) [Adv. Dkt. No. 20], and on June 28, 2017 the court denied such motion without prejudice. Order [Adv. Dkt. No. 29].